**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

```
┌──────────────────────────────────┐
│ U.S. DISTRICT COURT - N.D. OF N.Y.│
│         FILED                     │
│  ┌────────────────────────┐       │
│  │     DEC 3 0 2005        │       │
│  └────────────────────────┘       │
│  AT_____ O'CLOCK_____             │
│  Lawrence K. Baerman, Clerk - Syracuse │
└──────────────────────────────────┘
```

JOE MOORE, III,

                              Petitioner,

   v.                                                    **9:02-CV-0999**
                                                         **(NAM)/(GJD)**
VICTOR T. HERBERT, Superintendent,

                              Respondent.

_____

**APPEARANCES**                            **OF COUNSEL:**

**FOR THE PETITIONER:**

**JOE MOORE, III**
Petitioner, *pro se*
99-B-0748
Attica Correctional Facility
Box 149
Attica, NY 14011-0149

**FOR THE RESPONDENT:**

**HON. ELIOT SPITZER**                     **PATRICK F. MACRAE, Esq.**
**New York State Attorney General**
**Syracuse Division**
**615 Erie Boulevard West**
**Suite 102**
**Syracuse, NY 13204**

**NORMAN A. MORDUE, District Judge**

### MEMORANDUM-DECISION AND ORDER

**I.      BACKGROUND**

        According to the testimony adduced at trial, during the early morning hours of August 3,

1998, Deputy Michael Clere of the Onondaga County Sheriff's Department responded to a

report of shots being fired at a trailer park located in the Town of Dewitt, New York.  *See*

Transcript of Trial of Joe Moore, III (3/15/99) ("Trial Tr.") at pp. 103-04.  Upon arriving at the location mentioned in the police radio dispatch, Deputy Clere heard an individual speaking in a "very excited, very loud, nervous" tone on a cordless telephone.  *Id.* at p. 106.  Deputy Clere asked that man, who was later identified as Jeffrey Sakowski, if "the bad guys" had gone, to which Sakowski responded: "Yes, they shot my friend."  *Id.* at p. 107.

Upon entering Sakowski's trailer, Deputy Clere observed a man lying motionless on the living room floor.  A critical care technician for the East Area Volunteer Emergency Services ambulance corp for the Town of DeWitt soon arrived at the scene and, after observing that the victim had no heartbeat, the technician pronounced the man dead.  *Id.* at pp. 137-40.  The Chief Medical Examiner for Onondaga County subsequently determined that the victim, Robert Landers, had died from multiple gunshot wounds.  *Id.* at pp. 874-75.

The trial testimony also revealed that on the day Landers was shot, Sakowski, David Defio, Chris Nesci and "Pepe" Damico were present in Sakowski's trailer.  *Id.* at pp. 442, 448-49, 528.  Sakowski, Defio and Nesci left the trailer in order to purchase some crack cocaine, *id.* at pp. 532-33, and after making that purchase the men returned to the trailer.  *Id.* at p. 533.  Soon after their return, Landers arrived and was invited into Sakowski's residence.  *Id.* at pp. 535-36.  Approximately fifteen minutes later, Sakowski heard someone knocking on the door to his home.  *Id.* at pp. 536-37.  Upon opening the door, Sakowski observed Lawrence Moore standing in the doorway and petitioner, *pro se* Joe Moore holding a gun saying "are you ready?" *Id.* at pp. 542, 546-47.  Sakowski turned and ran from his front door, exclaiming "He's got a gun."  *Id.* at p. 543.  Shortly thereafter, Sakowski heard three shots being fired inside the trailer. *Id.*

2

During the course of their investigation, law enforcement agents discovered that approximately one week prior to the homicide, on July 26, 1998, petitioner, his brother Lawrence Moore, Ahed Shehadeh and Robert Mitchell had discussed the possibility of driving to a residence where Mitchell believed "lots of drugs and money" could be found.[1]  *Id.* at pp. 665-66.  Petitioner then drove the men to that residence,[2] after which Shehadeh agreed to knock on the home's front door.  *Id.* at pp. 668, 672.  Although Shehadeh knocked on the door twice, nobody opened the door.  *Id.* at p. 675.  The group then drove to a nearby parking lot where they debated whether they should rob the occupants of the residence.[3]  *Id.* at pp. 676-77.  Petitioner, his brother and Mitchell then went back to the trailer while Shehadeh remained in the parking lot.  *Id.* at p. 677.  Approximately fifteen minutes later, the trio returned after failing to convince the individual in the home to open the door.  *Id.* at 678-79.  The men left the area soon after they observed a police car enter the trailer park.  *Id.* at 679-80.  Moore, his brother and Mitchell thereafter began discussing their desire to obtain a gun in order to assist them in robbing the occupants of the residence.  *Id.* at 684-85.

The following day, Lawrence Moore went to the store at which Shehadeh worked and proceeded to "call[] [Shehadeh] a couple of names" because of his actions the previous night during the failed robbery attempt.  *Id.* at p. 686.  Shehadeh was then informed by Lawrence Moore that he "was going out there to do it himself and he [would be] looking for a gun." *Id.*

---

[1]        The evidence established that the home which the group had planned to rob was the same residence at which Landers was subsequently killed.  *See* Trial Tr. at pp. 113, 674.

[2]        During that drive, the group discussed their plan to "rob these people for their drugs or money."  Trial Tr. at p. 670.

[3]        Around this time, Lawrence Moore declared his desire to obtain a gun to facilitate the commission of the robbery.  Trial Tr. at p. 677.

3

As a result of the foregoing, on October 2, 1998, an Onondaga County grand jury returned an indictment against both Moore and his brother, charging them with second degree murder (in violation of N.Y. Penal Law § 125.25(1)) and criminal possession of a weapon in the second degree (in violation of N.Y. Penal Law § 265.03). *See* Indictment No. 98-0782 (reproduced in Appendix on Appeal ("App.") at pp. A12-13). The grand jury subsequently indicted Moore, his brother and Shehadeh, charging them in its second accusatory instrument with fourth degree conspiracy (in violation of N.Y. Penal Law § 105.10(1)) arising out of the July, 1998 attempt to commit the robbery at Sakowski's home. *See* Indictment No. 98-2485 (App. at pp. A25-26).

By motion dated February 5, 1999, the Onondaga County District Attorney's Office moved to consolidate the two indictments for purposes of trial. *See* App. at pp. A16-23. That application was opposed by Moore, *see id.* at pp. A46-49, and in a Decision and Order dated February 1, 1999, Onondaga County Court Judge J. Kevin Mulroy denied the prosecution's request to consolidate without prejudice to renew in the event the District Attorney succeeded in severing Shehadeh from the indictment in which he was jointly named with Joe and Lawrence Moore. App. at pp. A62-65. After the prosecution succeeded in severing Shehadeh from that conspiracy indictment, it filed a renewed request seeking consolidation of the two indictments against Moore. *Id.* at pp. A66-67. In a Decision and Order dated February 24, 1999, the trial court determined that the nature of the proof of the conspiracy and murder charges was such that proof of one of the crimes would be admissible as evidence in chief at trial on the other charge. Specifically, that court determined that:

> the evidence of the conspiracy would be admissible to show

> motive for the murder.  Likewise, evidence that these defendants
> returned to the location of the planned murder and attempted to
> complete the robbery, is evidence of the existence of the
> conspiracy.

*Id.* at pp. A68-69.  Judge Mulroy therefore granted the prosecution's motion to consolidate.  *Id.*
at p. A69.

Beginning on March 12, 1999, Moore and his brother were jointly tried on the charges

contained in the consolidated indictments before a jury in Onondaga County Court with Judge

Mulroy presiding.  At the conclusion of that trial, Moore was found guilty of all counts.  Trial

Tr. at pp. 1307-10.  On April 7, 1999, Moore appeared before Judge Mulroy for sentencing.  At

that time, the trial court sentenced Moore to a term of twenty-five years to life imprisonment on

the murder conviction, and lesser, concurrent terms on his remaining convictions.  *See*

Transcript of Sentencing of Joe Moore (4/7-8/99) at pp. 12, 15.

Moore appealed his convictions and sentences to the New York State Supreme Court,

Appellate Division, Fourth Department.  With the assistance of counsel, he argued in his appeal

that:  1) the trial court erred when it failed to provide the jury with a missing witness instruction

requested by defense counsel;[4] 2) the County Court improperly allowed hearsay admissions of

his codefendant to be admitted as evidence at trial; 3) the joining of the two indictments by the

County Court was an abuse of its discretion which prejudiced Moore; and 4) the verdict was

both against the weight of the evidence and not supported by legally sufficient evidence.  *See*

Appellate Brief (2/29/00) ("App. Br.") at pp. 42-63.  That appeal was opposed by the District

Attorney, *see* Respondent's Brief on Appeal (5/23/00) ("Resp. Br."), and on September 29,

---

[4]        Moore was represented by two attorneys at trial.  *See, e.g.,* Trial Tr. at p. 70.  Throughout this
decision, this Court will refer to Moore's trial attorneys collectively as "defense counsel."

2000, the Fourth Department issued a decision rejecting each of petitioner's contentions and unanimously affirming his conviction and sentence. *See People v. Moore*, 275 A.D.2d 969 (4th Dep't 2000). On November 28, 2000, New York's Court of Appeals denied Moore leave to appeal the Appellate Division's decision. *People v. Moore*, 95 N.Y.2d 936 (2000).

Petitioner claims that on October 24, 2001, he filed a motion to vacate his judgment of conviction pursuant to Section 440.10 of New York's Criminal Procedure Law ("CPL"). *See* Petition at ¶ 11(a)(2).[5] He claims that in that application he argued that he received the ineffective assistance of trial counsel, *id.* at ¶ 11(a)(3), but that the County Court denied his request on January 14, 2002. *Id.* at ¶ 11(a)(5), (6).

### B.    **This Proceeding**

Moore commenced this matter, *pro se*, on July 23, 2002. *See* Petition (Dkt. No. 1) at p. 7.[6] In his petition, Moore claims that his convictions are invalid because:  1) the trial court improperly denied the request of defense counsel for a missing witness instruction; 2) the County Court improperly allowed hearsay admissions of his brother into evidence at trial; 3) the trial court improperly joined the two indictments for purposes of trial; and 4) petitioner received the ineffective assistance of counsel. *See* Petition at Grounds One through Four. The New York State Attorney General, acting on respondent's behalf, has opposed the granting of

---

[5]    This Court was not provided with a copy of Moore's CPL § 440 motion, any opposition papers that may have been filed relating to that application, or the trial court's decision concerning that motion.

[6]    This is the date on which petitioner apparently signed his petition. The Second Circuit has held that, due to the unique difficulties faced by incarcerated *pro se* litigants, a prisoner's pleading is deemed to be properly filed at the time he hands the papers to the prison authorities for transmittal to the court. *Dory v. Ryan*, 999 F.2d 679, 681-82 (2d Cir.), *modified on reh'g*, 25 F.3d 81 (2d Cir. 1994); *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir.) (extending "prison mailbox rule" to petitions seeking writ of habeas corpus pursuant to 28 U.S.C. § 2254), *cert. denied*, 534 U.S. 886, 122 S.Ct. 197 (2001); *see also Walker v. Jastremski*, No. 04-3671, ___ F.3d ___, ___, 2005 WL 3046820, at *1 (2d Cir. Nov. 15, 2005).

Moore's petition by filing an answer and a memorandum of law in opposition to that application. *See* Dkt. Nos. 7, 8.  On March 19, 2003, Moore filed a traverse in further support of his request for federal habeas intervention.  *See* Dkt. No. 12.

## II.   DISCUSSION

### A.   Claimed Errors of the County Court[7]

#### 1.   Appropriate Standard of Review

Historically, when evaluating convictions in the face of collateral habeas challenges alleging error on the part of a trial court, habeas courts have inquired whether the trial court's error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citing *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)) (other citation omitted).  Following the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), however, it remained an "open question" in the Second Circuit whether the applicable test on federal habeas review of a state court conviction remains the one set forth in *Brecht*, or instead should be based upon a determination of whether the state court's decision was contrary to, or involved an unreasonable application of *Chapman v. California*, 386 U.S. 18 (1967).[8]  *See Benn v. Greiner*, 402 F.3d 100, 105 (2d Cir. 2005) (citation omitted); *Harvall*

---

[7]    Since most of the grounds raised in Moore's petition assert different claims in support of his contention that the County Court committed error during the course of the criminal proceedings below, *see* Petition, Grounds One through Three, this Court has found it appropriate to address the claims raised by petitioner by reference to the legal theories asserted by Moore, rather than by the ground in the petition in which he raises his arguments.

[8]    In *Chapman*, the Supreme Court held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*, 386 U.S. at 24.

*v. Phillips*, No. 03-CV-2968, 2005 WL 2095725, at *8 (E.D.N.Y. Aug. 30, 2005).

In *Gutierrez v. McGinnis*, 389 F.3d 300 (2d Cir. 2004), the Second Circuit resolved one aspect of this question by holding that when a state court explicitly conducts harmless error review of a claimed constitutional error, a federal habeas court must evaluate whether the state courts unreasonably applied *Chapman*. *See Gutierrez*, 389 F.3d at 306; *see also Zappulla v. New York*, 391 F.3d 462, 467 (2d Cir. 2004). Where, however, the state court did not engage in a harmless error analysis, the Second Circuit has not yet decided whether the *Chapman* or *Brecht* test is to be applied. *See Howard v. Walker*, 406 F.3d 114, 123 (2d Cir. 2005) (citing *Gutierrez*) (other citation omitted); *Crispino v. Allard*, 378 F.Supp.2d 393, 406 (S.D.N.Y. 2005) (citations omitted); *Harvall*, 2005 WL 2095725, at *8; *Ellis v. Phillips*, No. 04CIV.7988, 2005 WL 1637826, *24 n.45 (S.D.N.Y. July 13, 2005) (Peck, M.J.) (collecting cases).

In the present case, the Fourth Department did not engage in harmless error analysis in considering Moore's claims alleging error on the part of the County Court but instead determined that the County Court had not erred in any of the rulings challenged by Moore. *Moore*, 275 A.D.2d at 969-70. In view of the uncertainty within this circuit as to which standard of review is to be employed on a federal habeas claim alleging trial court error where the appellate court did not find any error on the part of the County Court, this Court will examine the claims raised by Moore utilizing both standards. *E.g. Harvall*, 2005 WL 2095725, at *9; *Brown v. Senkowski*, 97 CIV. 4415, 2004 WL 2979792, at *17 (S.D.N.Y. Dec. 14, 2004) (analyzing habeas claim under both standards where Appellate Division found no error on part of trial court in denying defendant's motion to suppress).

8

### 2.    Consideration of Moore's Claims in Light of *Chapman* and *Brecht*

### i.    Denial of Missing Witness Instruction

After the prosecution had rested, defense counsel requested that the trial court provide

the jury with a missing witness instruction due to the fact that the prosecution had failed to call

as witnesses on behalf of the prosecution Chris Nesci and "Pepe" Damico, both of whom were

present in Sakowski's home on the night Landers was shot.[9]  Trial Tr. at p. 916.  In support of

his request, defense counsel argued that those individuals were available to testify at trial and

would naturally have been expected to offer favorable testimony on behalf of the prosecution.

*Id.* at pp. 917-18.  The prosecution opposed the requested instruction, arguing that the two

individuals referenced in that request of defense counsel "had nothing to add to the events of

the homicide" and were not under the control of the prosecution.  *Id.* at pp. 919-19.  The trial

court denied the requested instruction, *see id.* at p. 1058; *see also id.* at pp. 1203-04, and

petitioner now contends, as he did in the state courts, that the trial court erred in refusing to

grant the requested missing witness instruction.  App. Br. at pp. 42-49; Petition, Ground One.

The Fourth Department determined that the County Court "properly denied [Moore's]

request for a missing witness charge" because the record did not establish that "the witnesses

would have provided testimony favorable to the People or that the witnesses were in the

People's control."  *Moore*, 275 A.D.2d at 969 (citations omitted).  This Court must therefore

consider whether this finding represents error that had a substantial and injurious effect or

---

[9]        "A missing witness charge allows the jury to draw an adverse inference that the testimony of
uncalled witnesses would have been unfavorable to the party that declined to call them." *Glover v. Bennett*,
No. 98-CV-0607, 2001 WL 1862807, at *5 (N.D.N.Y. Feb. 26, 2001) (Sharpe, M.J.) (citation omitted),
*adopted*, *Glover v. Bennett*, No. 98-CV-0607 (N.D.N.Y. Sept. 27, 2001) (Mordue, J.) (Dkt. No. 23), *aff'd
without op.*, *Glover v. Bennett*, No. 01-2633 (2d Cir. Mar. 4, 2003) (No. 98-CV-0607, Dkt. No. 30), *cert.
denied*, *Glover v. Bennett* 539 U.S. 907 (2003).

9

influence in determining the jury's verdict, or, alternatively, whether the County Court's evidentiary ruling constitutes an error that was not harmless beyond a reasonable doubt.

In *People v. Macana*, 84 N.Y.2d 173 (1994), New York's Court of Appeals noted that a party may only obtain a missing witness instruction where he meets the following three criteria:

> First, the witness's knowledge must be material to the trial.
> Second, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought. This has been referred to as the "control" element, which requires the court to evaluate the relationship between the witness and the party to whom the witness is expected to be faithful.
> Third, the witness must be available to that party.

*Macana*, 84 N.Y.2d at 196 (citation omitted). "Under New York law, whether to grant a request – by either party – for a missing witness charge lies in the sound discretion of the trial court." *Morales v. Walsh*, No. 02-CV-6045, 2003 WL 23185770, at *15 (E.D.N.Y. Oct. 30, 2003); *see, e.g.*, *Sagendorf-Teal v. County of Rennselaer*, 100 F.3d 270, 275 (2d Cir. 1996) (discussing when "trial court may use its discretion to give a missing witness charge") (citation omitted). Where a petitioner seeks federal habeas relief based upon a claim that he was wrongfully denied a missing witness charge, the burden to be shouldered by the petitioner is substantial. As then-Magistrate Judge Gary L. Sharpe sagely observed in *Glover*:

> [D]ecisions in this area will rarely support reversal or habeas relief since reviewing courts recognize 'the aura of gamesmanship that frequently accompanies requests for a missing witness charge as to which the trial judge will have a surer sense' than any reviewing court.

*Glover*, 2001 WL 1862807, at *5 (quoting *Malik v. Kelly*, No. 97 CV 4543, 1999 WL 390604, at *7 (E.D.N.Y. Apr. 6, 1999) (other citation and internal quotations omitted).

In opposing the requested charge, the prosecutor offered his legal strategy for not calling

the two witnesses referenced by defense counsel in support of the request for the missing

witness charge. Specifically, the prosecutor claimed that he did not utilize those witnesses:

> because they really had nothing to add to the events of the
> homicide. We heard from Mr. DeFio. We heard from Mr.
> Sakowski and I know for a fact that neither Mr. Damico nor Mr.
> Nesci would be able to identify anyone as being the shooter or –
> they could not identify anyone, so to call them would not add
> anything to this trial. So it's not as if they would be here to
> testify favorably or disfavorably for anyone. I can't understand
> how ... they're under our control.

Trial Tr. at pp. 918-19.

Although the record does not appear to reflect the trial court's basis for denying the

request by defense counsel for the instruction,[10] the Appellate Division specifically held that the

record did not demonstrate that the witnesses referenced by defense counsel were in the

prosecutor's control or that such individuals would have provided testimony favorable to the

prosecution. *Moore*, 275 A.D.2d at 969. A state court's finding that prospective witnesses are

not within the control of either party is a factual determination of a state court that must be

rebutted with clear and convincing evidence. *See Jones v. Spitzer*, No. 01CIV9754, 2003 WL

1563780, at *39 (S.D.N.Y. Mar. 26, 2003) (Gorentstein, M.J.), *adopted*, 2005 WL 167605

(S.D.N.Y. Jan. 25, 2005). A court's determination as to whether a witness would have

provided favorable testimony has similarly been found to be a factual finding of the court. *See*

*Smith v. Dixon*, 766 F.Supp. 1370, 1389-90 (E.D.N.C. 1991), *aff'd*, 996 F.2d 667 (4th Cir.

1993).

---

[10]    The trial court initially reserved on the motion by defense counsel for the requested charge.
Trial Tr. at p. 919. It appears to this Court as though the next time that such charge was discussed on the
record, the request had already been denied by the trial court. *See id.* at pp. 1057-58.

11

Petitioner has not provided any – much less clear and convincing – evidence which rebuts the Fourth Department's determination that neither Nesci nor Damico were in the control of the prosecutor.  Nor has Moore presented evidence that those individuals would have provided testimony favorable to the prosecution.  The petitioner bears the burden of proving in his habeas petition that his constitutional rights were violated in the state court proceeding.  *See Whitaker v. Meachum*, 123 F.3d 714, 716 (2d Cir. 1997) (citing *Walker v. Johnston*, 312 U.S. 275, 286, 61 S.Ct. 574, 579 (1941) (petitioner has the burden of "sustaining his allegations by a preponderance of evidence" on collateral review) (other citations omitted); *Lovacco v. Kelly*, No. 99 CV 3094, 2005 WL 2482518, at *3 (S.D.N.Y. Oct. 7, 2005) (citation omitted); *Frazier v. New York*, 187 F.Supp.2d 102, 108 (S.D.N.Y. 2002) (citation omitted).   Petitioner's failure to establish that Nesci and/or Damico were in the prosecution's control or that these individuals would have provided testimony favorable to the prosecution had they been called as witnesses represents a failure on Moore's part to satisfy this burden.

Since Moore has not demonstrated that the denial of the missing witness instruction was erroneous in any way, *a fortiori* he has failed to establish that this claimed error on the part of the trial court had a substantial and injurious effect or influence in determining the jury's verdict.  This Court alternatively finds that this alleged error was harmless beyond a reasonable doubt.  Accordingly, Moore is not entitled to habeas relief on this ground.

ii.     **Admission of Hearsay Evidence**

At the beginning of Moore's trial, defense counsel noted that law enforcement agents had obtained a statement from codefendant Lawrence Moore relating to the attempted robbery which both he and petitioner were charged with committing.  *See* Trial Tr. at pp. 72-74.

12

Defense counsel argued that the trial court should preclude the prosecution from using that statement, as well as Lawrence Moore's statement to Shehadeh the day after the attempted robbery at Sakowski's trailer, as evidence at trial.[11]  *Id.* at pp. 79-80.  In support of this request, defense counsel claimed that admission of those statements against petitioner would constitute a *Bruton* error.[12]  *See* Trial Tr. at pp. 80-87; *see also id.* at pp. 651-55.  The trial court denied that request, concluding that Lawrence Moore's out of court statements were admissible because they related to the conspiracy alleged in Indictment No. 98-2485.  *See* Trial Tr. at p. 87; *see also id.* at pp. 650-55.

Moore contends in the present action, as he did in his direct appeal, that the trial court erred when it permitted the prosecution to elicit testimony relating to the above-mentioned statements of Lawrence Moore.  *See* App. Br. at pp. 49-50; Petition, Ground Two.

A criminal defendant is typically deprived of his right of confrontation under the Sixth Amendment to the United States Constitution when a non-testifying codefendant's statement naming the defendant as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that statement only against the declarant.[13]  *See Richardson v. Marsh*, 481 U.S. 200, 201-02 (1987) (citing *Bruton*).

In light of the foregoing, this Court must therefore review the statements by Lawrence Moore that were admitted into evidence and determine whether admission of those statements constituted error which had a substantial and injurious effect or influence in determining the

---

[11]     In his statement the day after the July, 1998 attempted robbery, Lawrence Moore stated that he intended to secure a gun to assist him in committing the robbery.  Trial Tr. at p. 686.

[12]     *Bruton v. United States*, 391 U.S. 123 (1968).

[13]     None of the defendants, including Moore, testified at the criminal trial below.

jury's verdict, or, alternatively, was error that was not harmless beyond a reasonable doubt.

### a.    Statement by Lawrence Moore to Deputy Sheriff

Deputy Sheriff Kim Brennan of the Onondaga County Sheriff's Department testified that in a voluntary statement she obtained from Lawrence Moore during the course of the criminal investigation, he stated that on July 26, 1998 (the day of the alleged attempted robbery), he had knocked on the doors of several trailers in the area where Sakowski's residence was located in an effort to locate a girl he believed was living in that trailer park. Trial Tr. at pp. 788-89.  In that statement, Lawrence Moore also claimed that he was not in the trailer park on the day of the homicide  *Id.* at pp. 789-90.

This Court agrees with the Appellate Division that Deputy Brennan was properly allowed to testify about the foregoing statements made by Lawrence Moore.  As the Fourth Department noted, Lawrence Moore's statement to Deputy Brennan neither inculpated petitioner nor mentioned his name.  *Moore*, 275 A.D.2d at 969.  It is well-settled that where a statement of a codefendant does not implicate any of the other alleged coconspirators, *Bruton* is not implicated and the statement is properly admitted into evidence.  *E.g.*, *Glisson v. Mantello*, 287 F.Supp.2d 414, 422 (S.D.N.Y. 2003) ("[T]he rule laid down in *Bruton* does not apply to a case in which the challenged statement ... does not incriminate any of the declarant's codefendants.") (internal quotation and citation omitted); *Figueroa v. Portuondo*, 96 F.Supp.2d 256, 272 (S.D.N.Y. 1999) ("If a confession is redacted so that it does not inculpate co-defendants, *Bruton* is not implicated") (citing *Richardson*, 481 U.S. at 211) (quotation and other citation omitted).  Thus, this claim does not afford Moore a basis for federal habeas relief.

14

b.     **Statement by Lawrence Moore to Shehadeh**

In the criminal matter below, the trial court engaged in a fairly extensive legal

discussion with defense counsel regarding the issue of whether Lawrence Moore's statement

about securing a gun after the attempted robbery in July, 1998 was admissible at petitioner's

trial.  Specifically, the record reflects the following colloquy between defense counsel and the

County Court:

| | |
|---|---|
| Defense Counsel: | Judge, with respect to Mr. Shehadeh, now I understand that he can testify as to what happened on the night of the 26th -- |
| The Court: | Right. |
| Defense Counsel: | – but once the event was over that – the following day in his statement he indicated that, I believe it was Lawrence Moore met with him, dressed him down for his performance the night before and indicated that he was going to get a gun and go back.<br>        Now I would submit that is [a] *Bruton* issue which -- which he should not be permitted to go into because I'm not going to be able to cross-examine Lawrence Moore as to what he did or did not say the next day. |
| The Court: | But this conspiracy, the fact that they're going back to commit another crime, that is the heart and soul of a conspiracy and if that is, in fact, established, then statements of co-conspirators can, in fact, come in. |

* * * * *

| | |
|---|---|
| Defense Counsel: | Well, Judge, that's all quite wonderful with respect to Mr. Lawrence Moore, but Joe Moore sits here also and – |
| The Court: | Same – same cloak surrounds him. |

* * * * * *

| | |
|---|---|
| Defense Counsel: | [] There's nothing to allege, or no statement that he did anything after the fact to further the conspiracy.  And, |

|  | incidentally, if you look at the indictment for the conspiracy it's a one-day conspiracy if the events took place on July 26th. It's not a period including from July 26th to August 3rd. It's a one-day conspiracy. |
|---|---|
| The Court: | But it's a plan. It's a plan. That's what conspiracies are, a plan. |

* * * * *

|  |  |
|---|---|
| Defense Counsel: | But there is no – |
| The Court: | And therefore, the statements of them, no matter how they may affect the other's right of confrontation, are admissible. |
| Defense Counsel: | Judge, but there's nothing to indicate that they are – that one conspiracy necessarily – I mean that's an allegation. That's an allegation by the People that the conspiracy, although it's a one-day conspiracy, encompassed something that happened a week later. |
| The Court: | Well, when somebody says, "I'm going to get a gun and go back," and somebody goes back and somebody gets murdered, that's kind of an indication. Conspiracies don't need a time limit. They need a purpose and plan to do some – further some criminal event, be it a week, be it a day, be it a month... |

Trial Tr. at pp. 79-85.

Following that ruling, Shehadeh was permitted to testify about Lawrence Moore's

comment following the attempted robbery in July, 1998 to the effect that he intended to obtain a

gun and commit the robbery. *Id.* at p. 686.

In considering Moore's claim that admission of the foregoing statement constituted a

*Bruton* error, the Appellate Division determined that such statement "was properly admitted in

evidence as a declaration by a coconspirator during the course and in furtherance of the

conspiracy." *Moore*, 275 A.D.2d at 969-70 (citations omitted). This Court must determine

whether this claimed error on the part of the trial court had a substantial and injurious effect or influence in determining the jury's verdict, or, alternatively, constituted an error that was not harmless beyond a reasonable doubt.

"'[I]t has long been settled [under New York law] that the declarations of one coconspirator made in the course and furtherance of a conspiracy are admissible against all other coconspirators as an exception to the general rule against hearsay.'" *Haywood v. Portuando*, 288 F.Supp.2d 446, 470 (S.D.N.Y. 2003) (quoting *People v. Sanders*, 56 N.Y.2d 51, 62 (1982)) (other citation omitted).  Since the coconspirator exception to the hearsay rule "is steeped in [Supreme Court] jurisprudence," *see Bourjaily v. United States*, 483 U.S. 171, 183 (1987), both federal and state courts in New York have recognized that *Bruton* is inapplicable where the statement sought to be admitted is uttered by a coconspirator.  *See Bisnett v. Kelly*, 221 F.Supp.2d 373, 389-90 (E.D.N.Y. 2002); *United States v. Porter*, No. 92-CR-88, 1993 WL 276958, at \*4 (W.D.N.Y. July 20, 1993); *Grant v. Abrams*, 582 F.Supp. 1464, 1467 (S.D.N.Y. 1984) (coconspirators statements "f[e]ll into the conspiracy exception to the *Bruton* rule and were admissible against [petitioner]"); *People v. Rastelli*, 37 N.Y.2d 240, 244-45 (1975); *People v. Bisnett*, 144 A.D.2d 567, 570 (2d Dep't 1988).

The determination that a statement uttered by an individual was made in furtherance of a conspiracy is a factual finding of a court.  *See United States v. Simmons*, 923 F.2d 934 (2d Cir. 1991) ("what constitutes a statement that is 'in furtherance' of a conspiracy is essentially a question of fact"); *United States v. Singleton*, 260 F.3d 1295, 1301 (11th Cir. 2001) (citations omitted); *United States v. Green*, 180 F.3d 216, 222 (5th Cir. 1999) (citation omitted); *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 556 (11th Cir. 1998); *see, e.g., United*

*States v. Williamson*, 53 F.3d 1500 (10th Cir. 1995) ("preliminary foundational determinations, such as whether statements ... were made "during the course of" and "in furtherance of" a conspiracy, are factual findings").

Petitioner has not provided any evidence which rebuts the state courts' determinations that Lawrence Moore's statement to Shehadeh the day following the attempted robbery was made in furtherance of the conspiracy to rob the occupants of Sakowski's trailer.  Moreover, the facts adduced at trial amply support the trial court's determination in this regard:  immediately after the failed robbery attempt on July 26, 1998, petitioner, his brother and Mitchell discussed their desire to obtain a gun in for purposes of a committing a future robbery of Sakowski's trailer.  Trial Tr. at pp. 682-84.  Lawrence Moore's statement the following day that he intended to "look[] for a gun" to facilitate that robbery, *id.* at p. 686, was therefore properly allowed into evidence as a declaration made in the course of and in furtherance of the criminal conspiracy alleged in Indictment No. 98-2485.[14]

This Court therefore concludes that the determination that Lawrence Moore's statement to Shehadeh was properly admitted into evidence was not an error on the part of the trial court that had a substantial and injurious effect or influence in determining the jury's verdict.  The Court further finds that such ruling was not an error that was not harmless beyond a reasonable doubt.  Therefore this ground in Moore's petition must be denied.

### iii.    <u>Joinder of the Indictments</u>

Moore also contends, as he did in the state courts, that the County Court erred when it

---

[14]    The Court notes that one of the overt acts contained in Indictment No. 98-2485 alleged that on August 3, 1998, Lawrence and Joe Moore returned to the trailer park with a loaded handgun. *See* Indictment No. 98-2485, Overt Act No. 10.

granted the prosecution's motion to join Indictment No. 98-0782 (which charged petitioner with second degree murder and criminal possession of a weapon) with Indictment No. 98-2485 (which charged petitioner with fourth degree conspiracy relating to the July, 1998 attempted robbery of Sakowski's home). *See, e.g.*, App. Br. at pp. 51-54; Petition at p. 6. Petitioner contends that by granting the consolidation motion and forcing petitioner to be tried on both indictments in a single trial, the County Court improperly created "a substantial risk that proof of one (1) incident would improperly influence the jury's consideration of the proof relating to the other incident." Petition at p. 6 (typeface altered).

In denying this aspect of Moore's appeal, the Fourth Department determined that:

> County Court did not abuse its discretion in consolidating for trial the indictment charging defendant with conspiracy and the indictment charging him with the remaining counts of which he was convicted (see, CPL [§] 200.20 [4], [5]). Evidence of the conspiracy to rob a specific mobile home was material and admissible as evidence-in-chief to establish defendant's motive and intent with respect to the murder that occurred in that same mobile home and thus the offenses charged in both indictments were joinable for trial purposes pursuant to CPL [§] 200.20(2)(b).

*Moore*, 275 A.D.2d at 969 (citation omitted).

The Supreme Court has held that the convenience of trying different crimes against the same person in a single trial is a valid governmental interest and therefore justified under the United States Constitution. *Spencer v. Texas*, 385 U.S. 554, 562 (1967). "Therefore, where a [party] is claiming a due process violation based upon joinder of offenses, he must, to succeed, go beyond the potential for prejudice and prove that actual prejudice resulted from the events as they unfolded during the joint trial." *Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993).

Moore has failed to establish that the joinder of the two indictments rendered his

criminal trial fundamentally unfair.  In this regard, the Court agrees with the determination of

the Appellate Division that evidence of the conspiracy to rob Sakowski's home was both

admissible and material to establish Moore's motive and/or intent with respect to the homicide

that occurred in that same mobile home the following week. *See Moore*, 275 A.D.2d at 969

(citation omitted).  Additionally, the record reflects that the jury was specifically instructed that

the indictments were tried jointly "solely for the convenience of the Court," and that, absent

instructions to the contrary, the jury was "required to separate in your mind the evidence

applicable solely to each crime and return a verdict on each crime based solely on the evidence

that is applicable to that particular crime."  Trial Tr. at pp. 1180-81.[15]  Courts may properly

consider such an instruction in evaluating a habeas claim alleging prejudice as a result of a joint

trial. *E.g.*, *Davis v. Kelly*, 2 F.Supp.2d 362, 366-67 (W.D.N.Y. 1998).

  In the present proceeding, petitioner has not established that the joinder of the two

indictments prejudiced him in any way or otherwise deprived him of his right to a fair trial.

Therefore, he has not established that his joint trial on those indictments was an error on the

part of the trial court that had a substantial and injurious effect or influence in determining the

jury's verdict, or, alternatively, constituted an error that was not harmless beyond a reasonable

doubt.  The Court accordingly denies Moore's third ground for relief. *E.g.*, *Willis v. Duncan*,

No. 00-CV-4171, 2003 WL 21845664, at *5-6 (E.D.N.Y. Aug. 4, 2003) (denying habeas claim

that joinder of weapons and narcotics charges with homicide charge relating to death of

---

[15]  The jury is presumed to have followed these and all of the County Court's instructions. *See Smith v. Barkley*, No. 99-CV-0257, 2004 WL 437470, at *4 n.4 (N.D.N.Y. Feb. 18, 2004) (Sharpe, J.) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Shariff v. Artuz*, No. 97CIV.2882, 2001 WL 135763, at *3 (S.D.N.Y. Feb. 16, 2001)) (other citation omitted).

petitioner's two year old son deprived petitioner of fair trial); *Scott v. Kelly*, No. 98-CV-811, 1999 WL 1390251, at \*4 (W.D.N.Y. Aug 24, 1999) (trial counsel not ineffective in failing to seek severance of counts charging criminal possession of a weapon and criminal possession of a controlled substance from unrelated charges alleging attempted murder, assault, robbery, attempted robbery; petitioner failed to establish that the joinder of the charges rendered his trial unfair).

**B.     Ineffective Assistance of Counsel**

The final claim asserted by Moore in support of his petition argues that he received the ineffective assistance of counsel when defense counsel failed to ensure that Moore was afforded the opportunity to testify before the grand jury that ultimately indicted him. *See* Petition, Ground Four.

A criminal defendant's right to testify before the grand jury is not a constitutional right; rather, it is a statutorily created right. *See* CPL § 190.50(5).  Consequently, a claim arising out of a defendant's failure to testify before a grand jury does not afford a petitioner a basis for federal habeas relief. *Montalvo v. Annetts*, No. 02 CIV.1056, 2003 WL 22962504, at \*24 (S.D.N.Y. Dec. 17, 2003) (collecting cases); *McMoore v. Miller*, No. 98-CV-1915, 2002 WL 975305, at \*8 (N.D.N.Y. Apr. 19, 2002) (Sharpe, M.J.) (denying petitioner's ineffectiveness claim relating to petitioner's failure to testify before the grand jury; "the right to testify before a grand jury is purely a state statutory right, and claims of deficiencies in a state grand jury proceeding are not cognizable in a federal habeas petition") (citations omitted), *adopted*, *McMoore v. Miller*, No. 98-CV-1915 (N.D.N.Y. May 16, 2002) (Kahn, J.) (Dkt. No. 23), *appeal dismissed*, *McMoore v. Miller*, No. 02-2414 (2d Cir. Jan. 23, 2003) (No. 98-CV-0607,

21

Dkt. No. 35); *see also Kohler v. Kelly*, 890 F.Supp. 207, 213 (W.D.N.Y. 1994) (citations

omitted), *aff'd*, 58 F.3d 58 (2d Cir. 1995).

Moreover, even if this claim was cognizable on federal habeas review, a habeas

petitioner could never establish prejudice based upon such a claimed deficiency on the part of

counsel.  As Senior Judge Weinstein observed in *Turner v. Fischer*, No. 01-CV-3251, 2003 WL

22284177 (E.D.N.Y. Aug. 20, 2003):

> Assuming to be true petitioner's claim that counsel waived his
> right to appear before the grand jury without petitioner's
> permission, petitioner cannot demonstrate that he was prejudiced
> thereby.  He was afforded a jury trial and was convicted by a petit
> jury....  Any prejudice suffered by petitioner was rendered
> harmless by his conviction at trial by the petit jury, which
> assessed his guilt under a heightened standard of proof.  *See
> Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989).

*Turner*, 2003 WL 22284177, at *6.[16]

Since petitioner's fourth ground for relief is not cognizable in this matter and, in any

event, petitioner cannot establish that he was prejudiced due to the failure of defense counsel to

ensure that Moore was afforded the opportunity to testify before the grand jury that indicted

him, this Court denies the fourth and final ground for relief asserted by Moore in his petition.

**WHEREFORE**, based upon the foregoing, it is hereby

**ORDERED**, that Moore's habeas petition (Dkt. No. 1) is **DENIED and DISMISSED**,

and it is further

---

[16]     The Court notes in passing that New York state courts have consistently held that a trial
counsel's failure to effectuate a defendant's right to testify before the grand jury does not amount to ineffective
assistance of counsel. *People v. Smith*, 291 A.D.2d 292, 292 (1st Dep't 2002) (citations omitted); *People v.
Bundy*, 186 A.D.2d 357, 358 (1st Dep't 1992) (citations omitted); *People v. Hunter*, 169 A.D.2d 538, 539 (1st
Dep't 1991) (citation omitted).

**ORDERED**, that the state court records be returned directly to the Attorney General at the conclusion of these proceedings (including any appeal of this Decision and Order filed by any party), and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties by regular or electronic mail.

IT IS SO ORDERED.

December 30th, 2005
Syracuse, New York

Hon. Norman A. Mordue
United States District Judge